PER CURIAM.
Steven Shelby appeals the order denying his timely postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850, in which he raised five grounds for relief. We reverse and remand for further proceedings on only grounds two and three.
On June 5, 2007, Shelby was found guilty of aggravated child abuse and sentenced to fifteen years’ imprisonment. His charge and conviction resulted from the following events: On April 9, 2006, Shelby became angry with his live-in girlfriend’s nine-year-old son, W.W. According to W.W.’s testimony, Shelby put dry rice in two piles on the floor and made him kneel on the piles while holding a book over his head in each outstretched hand. Shelby then allegedly took off his belt and put it around W.W.’s neck, tightening it until he blacked out. After the alleged incident, W.W. joined Shelby, his mother, his aunt, and his two sisters in the living room to watch a movie. Two days later, while at school, W.W. was called into the office and questioned by a child protection investigator who, upon observing his injuries, contacted law enforcement. After further questioning, law enforcement officers went to Shelby’s home and took him into custody.
In the second ground of his motion, Shelby claimed that his counsel was ineffective for failing to call a number of witnesses who allegedly could have provided testimony that would have corroborated his theory of defense. First, he claimed that Dawn Boire, W.W.’s mother, would have testified that on the day of the incident, she was at home and Shelby did not do anything to her son, a fact that was allegedly supported by her statements to police. However, Boire was actually called by Shelby’s counsel to testify. Athough Boire stated that she did not recall what she said on the day of the incident, the officer involved did testify at trial as to her recorded statement, which was as follows: “I was home on Sunday and Steve didn’t do anything to [W.W.]. I’m his mother and I would not let anything happen to the kids.” Therefore, Shelby’s counsel’s failure to elicit the desired testimony from Boire, to the extent that this was even possible, was cured by the introduction of the evidence by another witness.
However, the failure of defense counsel to elicit testimony from other available witnesses may have been prejudi *847 cial to Shelby’s defense. Shelby claimed that Alicia and Ariel, W.W.’s sisters, would have testified that on the day of the alleged incident they were at home watching TV. Their brother did not appear to have been choked or forced to kneel on dry rice, nor did he say anything to them about it. They would have testified that W.W. watched a movie with the family and acted as if everything was normal. Shelby also claimed that Tracy, Boire’s older sister and W.W.’s aunt, would have testified that she was present at the time of the alleged incident and that W.W. and Shelby were interacting in a friendly manner the whole time she was there. She would have further testified that, like her sister, she would not let anything happen to the kids. Ultimately, Shelby claimed that if his counsel had called the above witnesses, it would have corroborated his defense, destroyed the prosecution’s case, impeached W.W.’s testimony, and changed the outcome of the trial. Furthermore, we must accept Shelby’s sworn factual allegations to the extent they are not refuted by the record. See Peede v. State, 748 So.2d 253, 257 (Fla.1999).
As to W.W.’s aunt and sisters, the post-conviction court noted that W.W. himself testified to watching a movie with the family after the incident. As a result, the postconviction court found that all the information and testimony that Shelby wanted to have introduced at trial was in fact presented by other witnesses. However, the postconviction court has overlooked certain important pieces of information. Shelby claimed that W.W.’s aunt and sisters would have testified not only to the fact that W.W. watched a movie with the family after the alleged incident, but that nothing appeared to have occurred to W.W. Testimony as to W.W.’s calm demeanor and lack of apparent injuries immediately following the alleged incident, as well as his friendly attitude towards Shelby throughout the day, all could have been beneficial to Shelby at trial; and none of this information was introduced by other witnesses. As argued by Shelby, this information would have at least helped to corroborate his defense of actual innocence.
In ground three, Shelby made a variety of general claims based upon his counsel’s alleged failure to adequately investigate, prepare, and present a viable defense strategy. However, part of this claim involved the allegation that Shelby’s counsel made no attempt to locate certain witnesses for the defense even though Shelby told him where they could be found and that they were available. In denying this claim, the postconviction court found that Shelby was merely speculating and had failed to show that his counsel had actually failed to investigate the case. In addition, the postconviction court noted that prior to the trial, defense counsel represented to the court that he was prepared for trial and wished to present evidence of lesser offenses. Finally, the postconviction court relied on its reasoning from ground two, finding that all desired testimony had been produced by other witnesses. However, as with ground two, the postconviction court has overlooked some significant facts that were not presented at trial but potentially could have been produced by certain identified and available witnesses.
Because Shelby has raised a facially sufficient claim of ineffective assistance of counsel for failure to call witnesses, we must reverse the postconviction court’s denial of grounds two and three insofar as they pertain to counsel’s failure to locate, prepare, and call the victim’s aunt and sisters to testify. See Bulley v. State, 900 So.2d 596, 597 (Fla. 2d DCA 2004). On remand, the postconviction court is instructed to either attach portions of the *848 record conclusively refuting Shelby’s claim or conduct an evidentiary hearing.
Affirmed in part; reversed in part; and remanded.
WHATLEY, DAVIS, and CRENSHAW, JJ., Concur.